**SIGNED THIS: January 16, 2026**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re | ) |
| | ) Case No.   23-90402 |
| ONE MAIN DEVELOPMENT, LLC, | ) |
| | ) Chapter 7 |
| Debtor. | ) |

# O P I N I O N

Before the Court is creditor Clayton Jefferson Development, LLC's Motion to Alter or Amend Order on Motion to Modify Protective Order, asking the Court to alter or amend its order entered November 4, 2025, denying the creditor's motion to modify protective order, pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e). For the reasons set forth herein, the Motion to Alter or Amend Order will be denied.

## I.  Factual and Procedural Background

The Debtor, One Main Development, LLC, filed its voluntary petition under Chapter 7 on September 11, 2023. The Debtor filed the required schedules, statements, and other documents shortly thereafter. The case trustee, Jeffrey D. Richardson, conducted two creditors meetings, and, at the Trustee's request, a deadline for filing claims was set for February 16, 2024. The progression of the case was largely uneventful until April 2024, when Clayton Jefferson Development, LLC ("CJD") entered the picture.

At that time, CJD filed a motion seeking authorization to issue subpoenas pursuant to Bankruptcy Rules 2004 and 9016 to four individuals, four corporate affiliates of the Debtor, and eight financial institutions. A hearing on the motion was held May 8, 2024. Attorneys Mark Carter and Jack Shadid appeared on behalf of CJD. Attorney Laura Cohen appeared on behalf of 502 N. Neil, LLC, One Main Holdings, LLC, One Main Construction, LLC, and M2 on Neil, LLC—the four affiliates of the Debtor to which subpoenas were to be directed. No one appeared on behalf of the Debtor. After hearing the arguments of counsel, the motion was granted without prejudice to the right of any individual or entity subpoenaed to raise specific objections to their subpoena. The order granting the motion was entered on May 9, 2024.

Less than a week later, Attorney Kevin Sterling entered his appearance for the four affiliates previously represented by Attorney Cohen. Attorney Sterling filed a motion for protective order on behalf of the affiliates seeking to have certain requests for information from financial institutions stricken. The motion

asserted that discovery had been completed in related state-court proceedings, and that the requests were burdensome and invasive as to nondebtors. CJD responded asserting that the requests were not burdensome, that the financial institutions had not objected, and that the information was needed to fully understand the financial affairs of the Debtor.

A hearing on the motion for protective order was held on June 13, 2024. Attorney Carter appeared for CJD, and Attorney Sterling appeared for the four affiliates. Again, no one appeared for the Debtor. After hearing the somewhat contentious arguments of counsel, the Court declined to strike any of the subpoenas. Based on discussion at the hearing of terms that would be acceptable to both sides, a protective order was entered limiting the use of any information received pursuant to the subpoenas to bankruptcy-related proceedings and limiting dissemination of the information to the Trustee and his attorneys and to CJD's attorneys. In the order entered June 14, 2024, this Court suggested that it would consider modification of the protective order to allow for review of the information by experts and other witnesses, but any such modification would be on a document-by-document basis.

Nothing further was filed in the case until more than 13 months later when Trustee Richardson filed his report of no distribution on July 21, 2025. The Trustee represented that he had discovered no assets to be administered and requested that he be discharged. On August 20, 2025, CJD filed an objection to the Trustee's report, asserting that it had identified causes of action that should

be prosecuted by the Trustee for the benefit of the estate. A hearing on the Trustee's report was then set for September 10, 2025.

On September 3, 2025, CJD filed two motions: one seeking authority to proceed derivatively to prosecute claims on behalf of the estate and the other seeking to modify the previously-entered protective order. A copy of a proposed complaint was attached to the motion for derivative standing; the complaint asserted causes of action against the Debtor, several of its affiliates, and three individuals. An expedited hearing was requested because CJD claimed that the deadline for the filing of the complaint—or at least some of the counts in the complaint—was September 11, 2025. 11 U.S.C. §546(a). As for its motion to modify the protective order, CJD asserted that, to be able to fully understand the documents received through the previously-authorized discovery and to be able to prosecute the claims it identified on behalf of the estate, it needed to be able to disclose the information to an expert witness and to CJD's president. Both motions were set for hearing on September 10, 2025, with the Trustee's report of no distribution.

The discussion at the September 10 hearing centered on CJD's motion for derivative standing. Mr. Carter for CJD acknowledged that the standard for granting derivative standing requires findings that there exists a colorable claim or cause of action and that the Trustee unjustifiably refused a demand to pursue the action. But he said that the focus should be on whether there is a colorable claim, and, if demand was made and the Trustee declined to pursue such claim, that should be enough. The Court explained that a standard for derivative

standing requiring a demand and refusal without more is no standard at all, and it declined to accept CJD's position that simply making a demand on the Trustee was sufficient. Rather, some presentation of evidence was necessary for the Court to find that the Trustee unjustifiably refused to pursue a colorable claim or cause of action likely to benefit the bankruptcy estate. In the absence of such evidence, the Court ultimately denied CJD's motion for derivative standing and its objection to the Trustee's report of no distribution. In doing so, the Court noted the unresolved factual issues surrounding the demands made on the Trustee, the Trustee's offer to sell the claims under terms CJD deemed unacceptable, and the timeline of events leading up to the motion. The Court also noted statute of limitation issues as impediments to establishing a colorable claim, which CJD did not meaningfully address other than arguing that there might be some, unspecified basis for tolling the applicable statute. The denial of the motion for derivative standing was without prejudice.

As for the motion to modify protective order, CJD expressed its intention to proceed with its request notwithstanding the denial of derivative standing. A further hearing on the matter was set for October 8, 2025, and a deadline was set for interested parties to file written responses prior to the continued setting. The four affiliates represented by Attorney Sterling filed a joint response objecting to the motion to modify protective order. At the October 8 hearing, the Court heard arguments for and against modification of the protective order. The Court then took the matter under advisement, and, after reviewing the record and the arguments of all interested parties, the Court entered a written order

denying the motion to modify protective order with the reasons for the denial set forth therein.

The Order entered November 4, 2025, recited the history of activity in the case, including the September 10 hearing at which the motion for derivative standing was considered and denied and the October 8 continued setting on the motion to modify protective order. The Order summarized the positions taken by the interested parties at the October 8 hearing as follows. Attorney Shadid for CJD represented that his client had no intention of going back to state court and wanted to use the information subject to the protective order to pursue federal causes of action only. He complained about the completeness of the information that had been provided, noted that it was not privileged information, and asserted that the assistance of an expert was needed to fully review the documents that were produced. When questioned about where the case was going given the apparent absence of any viable cause of action to pursue for the estate, Attorney Shadid suggested that the claim filed in the case by CJD to which no objection had been filed constituted a final judgment against the Debtor which, under Illinois law, would be subject to collection efforts for seven years after the judgment was entered. He argued that available collection remedies could include piercing the corporate veil and pursuing alter ego claims against the affiliates and certain individuals associated with the Debtor.

Attorney Sterling for the affiliates contended that any complaints about subpoena compliance were stale and should have been raised earlier. He noted that the Trustee had filed his report of no distribution and that CJD had been

denied derivative standing, calling into question the purpose of the motion and the propriety of the relief sought. Attorney Sterling also complained that the motion was overly broad and not justified under the circumstances.

In denying the motion to modify protective order, the Court noted the filing of the Trustee's report of no distribution, that CJD had been denied derivative standing, and that, but for the pending motion, the case was ready to close. As stated in the Order, "[b]ecause [CJD], after more than a year of extensive discovery, has not identified any action it might file in this Court, there is no basis to allow further discovery or to modify the protective order." The Court went on to explain that Attorney Shadid offered no authority for his argument that the claim filed by CJD was a final judgment for collection purposes and that the Court's own research showed the weight of authority was to the contrary. *See, e.g., Thermal Surgical, LLC v. Brown*, 150 F.4th 115, 125 (2d Cir. 2025) ("An allowed claim in bankruptcy is not an enforceable money judgment that can be attached to a debtor's future assets."); *Ziino v. Baker*, 613 F.3d 1326, 1329 (11th Cir. 2010) ("[A]n allowed claim in bankruptcy and a money judgment are not functionally identical."); *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1248 (9th Cir. 1999) ("[A]n allowance of claim is not equivalent to a judgment for purposes of perfecting an attachment lien.").

The Court also agreed with Attorney Sterling's objection to the broad scope and lack of justification for the requested modification. Noting that the protective order was entered in exchange for the broad and extensive authority for CJD to pursue discovery under Bankruptcy Rule 2004, the Court explained that the

protective order clearly limited the use of information obtained to the bankruptcy case and related proceedings and limited dissemination of the information to the Trustee and the attorneys for CJD. The protective order further contemplated the need for later modification to expand dissemination to CJD, experts, and other witnesses on a document-by-document basis. But, as the Court explained in the November 4 Order, the motion to modify protective order neither identified particular documents for further dissemination nor made any claim that the terms of the protective order should be lifted for each and every document obtained. The motion to modify protective order likewise failed to justify the need for relief other than in cryptic terms and, although the need for an expert was explained, offered no explanation or justification for dissemination of information to CJD's president. The Court also noted in the Order that the motion to modify protective order did "not seek modification of the limits placed on dissemination of the information requiring that it only be used for bankruptcy purposes." The Court concluded that the lack of particularity as to the relief requested and reasons therefor was a separate basis for denying the motion to modify protective order.

On November 18, 2025, Attorney Shadid filed the Motion to Alter or Amend Order on Motion to Modify Protective Order that is now before the Court. Purportedly brought pursuant to Federal Rule of Civil Procedure 59, incorporated and applicable in bankruptcy through Bankruptcy Rule 9023, the Motion points to five findings and conclusions from the November 4 Order, which CJD says warrant relief under Rule 59(e):

-8-

(1) "It is also admitted that the Trustee had offered to sell the causes of action to it, but it had declined to purchase them."

(2) "The Motion does not seek modification of the limits placed on the dissemination of the information requiring that it only be used for bankruptcy purposes."

(3) "Because [CJD], after more than a year of extensive discovery, has not identified any action it might file in this Court, there is no basis to allow further discovery or to modify the protective order."

(4) "[CJD] has been denied derivative standing to act on behalf of the estate."

(5) "[T]he request for dissemination to the president of [CJD] is wholly unsupported by any facts about the knowledge or skill of the president or what actual role he might play in the document examination."

The Motion suggests that the Court patently misunderstood the parties' positions and endeavors to justify CJD's position in part by adding context not previously provided.

The affiliates filed a response in opposition to the Motion to Alter or Amend. They contend that the Motion is improperly brought under Bankruptcy Rule 9023 because the November 4 Order was not a final judgment and therefore more appropriately analyzed under Bankruptcy Rule 7054 and Federal Rule of Civil Procedure 54(b). But regardless of the legal framework under which it is analyzed, the affiliates argue that the Motion fails to meet the required standards and rather "simply re-packages arguments CJD previously made or could have made in connection with its Motion to Modify Protective Order and its motion for derivative standing, and adds further detail about matters already discussed at the hearings."

The Trustee also filed a response stating his opposition to the Motion to Alter or Amend and offering a "full copy" of the heavily redacted correspondence attached as an exhibit to CJD's Motion. He also took issue with CJD's characterization of itself as a judgment creditor for purposes of its legal theory that it has colorable claims against the Debtor. In the Trustee's opinion, CJD has not identified any facts in the case to support its positions but rather relies on the arguments themselves.

After the Court took the matter under advisement, Attorneys Carter and Shadid filed a motion to withdraw as counsel for CJD, citing irreconcilable differences based at least in part on CJD's president filing notices in the case without counsel's involvement. The motion to withdraw was granted. The Court having reviewed CJD's Motion to Alter or Amend, the affiliate and Trustee responses, and the entire record, the matter is ready for decision.

## II.   Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of an estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (O). The matters here arise directly from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be

constitutionally decided by a bankruptcy judge. *See Stern v. Marshall,* 564 U.S. 462, 499, (2011).

### III.    Legal Analysis

Essentially a motion to reconsider, a motion to amend or alter a judgment under Rule 59(e) is appropriately used to correct manifest errors of law or fact or to present newly discovered evidence. *Matter of Prince,* 85 F.3d 314, 324 (7th Cir. 1996). Although Rule 59(e) should generally not be used to ask the court to revisit arguments previously made, relief may be available when the court is alleged to have misunderstood or misapprehended the facts or a party's contentions. *County Materials Corp. v. Allan Block Corp.,* 436 F. Supp. 2d 997, 999 (W.D. Wis. 2006) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990), and *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995)). The moving party must clearly establish its entitlement to relief. *Id.* (citing *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision whether to grant or deny a Rule 59(e) motion is within the discretion of the court. *Prince,* 85 F.3d at 324.

CJD's assertion that there is manifest error here is centered around five findings and conclusions in the Court's November 4 Order. CJD first takes issue with the Court's reference to an offer being made by the Trustee to sell causes of action to CJD which CJD declined to purchase. CJD complains that there is more to the story; the terms of the offer, which included waiver of any right to bring the causes of action in bankruptcy or federal court, made it unacceptable

given the terms of the protective order barring the use of Rule 2004 discovery for non-bankruptcy purposes. Had the Trustee offered to sell the causes of action without the federal restrictions, CJD says it would have accepted the offer.

CJD does not explain how the Court's reference to the Trustee's unaccepted offer led to manifest error. It seems that CJD disagrees with the Court's characterization of CJD's nonacceptance of the Trustee's offer as declining to purchase the causes of action. But arguing semantics of whether CJD "declined to purchase" the causes of action by not accepting the Trustee's offer is a nonstarter. The denial of derivative standing was not based on a finding that the Trustee's offer was reasonable or that his refusal to prosecute the causes of action was justifiable. Rather, the Court denied derivative standing based largely on CJD's failure to present a factual basis for finding the Trustee acted unreasonably. Indeed, CJD not only failed to allege facts in its motion to support granting derivative standing; at the hearing, its attorney declined to even second guess the Trustee's judgment over prosecuting claims. Compounding matters, the motion was filed on the eve of what was alleged to be the statutory deadline for bringing at least one cause of action such that holding an evidentiary hearing on the issue was not feasible.

According to the email correspondence attached to the Motion to Alter or Amend, the Trustee made his offer to sell the causes of action two months before he filed his report of no distribution and four months before CJD filed its motions for derivative standing and to modify the protective order. At the hearing on derivative standing, Attorney Carter for CJD acknowledged that the timing of the

request limited the Court's ability to have an evidentiary hearing but said he did not have authority from his client to file the motion earlier. Despite anticipating the issue, Mr. Carter had little else to offer on the subject beyond suggesting there could be some unspecified basis for tolling applicable statutes of limitations. He did ask that CJD be allowed to file its proposed complaint as a placeholder pending resolution of evidentiary issues, which the Court denied. But at no point did Mr. Carter suggest that the time-sensitive avoidance claims were dispensable or that whatever other claims not so time-barred could independently satisfy the standard for derivative standing if an evidentiary hearing were to be held.

Perhaps the outcome would have been different had CJD promptly sought relief from the Court after receiving the Trustee's "unacceptable" offer, made a meaningful case at hearing that the Trustee acted unreasonably, or been better prepared to address the statutory impediments associated with seeking relief when it did. But that is not the record upon which the Motion to Alter or Amend comes before the Court, and CJD cannot use Rule 59(e) to relitigate matters or present facts or arguments which could and should have been made before the motion was decided. *County Materials Corp.,* 436 F. Supp. 2d at 999-1000 (citations omitted).

The second statement that CJD takes issue with is the Court's finding that the motion to modify protective order did "not seek modification of the limits placed on the dissemination of the information requiring that it only be used for bankruptcy purposes." CJD believes this to be an incorrect statement and says

that its position is that the causes of action needed to be brought in federal court rather than state court. It is clear there is a misunderstanding, but it is on the part of CJD rather than the Court. The Court's statement merely expressed that the motion to modify protective order, on its face, did not request modification of the limitation that use of the Rule 2004 discovery be limited to the bankruptcy case and related proceedings in the bankruptcy court. All that was requested in the motion to modify protective order was that the restriction on dissemination of information be modified to give CJD's president and an expert access to the information. The Court's statement of what relief was and was not requested in the motion to modify protective order is accurate. But it also was not a determinative factor in the Court's decision and nothing in the November 4 Order suggests otherwise.

CJD next takes issue with a statement in the November 4 Order that is at the heart of the Court's decision: "Because [CJD], after more than a year of extensive discovery, has not identified any action it might file in this Court, there is no basis to allow further discovery or to modify the protective order." CJD complains that the Trustee's erroneous belief about the nature of potential causes of action is "woven into the [November 4 Order] and reflects manifest error." CJD contends that it has asserted viable alter ego claims under Illinois law and that the seven-year statute of limitations period applicable to enforcement of judgments would apply to those claims. Alternatively, CJD suggests that no statute of limitations would apply to alter ego actions through

-14-

which estate property might be recovered. There are several problems with CJD's position.

For starters, CJD has been denied derivative standing. This, of course, is another finding in the November 4 Order that CJD says is manifest error. The argument is wholly without merit. CJD seems to think that the Court's statement conflicts with its earlier order denying derivative standing that stated such denial was without prejudice, but the denial being without prejudice does not change the fact that CJD was denied derivative standing. As a result, there is currently no cause of action that CJD could bring on the Trustee's behalf. CJD says the "distinction is significant as [it] intends to proceed with a new standing motion if permitted to do so." Again, this does not change the fact that CJD was denied derivative standing. To date, CJD has not filed another motion for derivative standing, and, absent a pending motion renewing its request for derivative standing, CJD's arguments about actions the Trustee could pursue are wholly speculative and unpersuasive. Nor has CJD identified any causes of action it might bring on its own behalf. Indeed, its arguments about possible alter ego claims are premised on the Trustee rather than CJD having standing to bring them, thus the request for derivative standing in the first place.

Further, the present Motion to Alter or Amend largely rehashes arguments about the viability of alter ego causes of action previously raised, advances new or modified legal theories that could and should have been raised earlier, or otherwise seeks to relitigate old matters. The Seventh Circuit has plainly held that Rule 59(e) motions cannot be used for such purposes. *Vesely v. Armslist*

*LLC,* 762 F.3d 661, 666 (7th Cir. 2014) (citation omitted); *County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 819 (7th Cir. 2006) (citing *LB Credit Corp.,* 49 F.3d at 1267).

In rejecting CJD's contention at the October 8 hearing on modification of the protective order—made without any citation to authority—that its unobjected-to claim filed in the bankruptcy case was a judgment with a seven-year limitation period for commencing a collection action, the Court carefully considered the issue and explained its reasoning with citation to relevant case law. In contending that the Court committed manifest error, CJD does not challenge the Court's reasoning but cites case law where courts have applied the statute of limitation period for enforcement of judgments to alter ego claims. None of the cases cited by CJD, however, involved unobjected-to claims as money judgments, and CJD does not otherwise identify any underlying judgment through which the limitations period for collection might be extended to alter ego claims. To the extent the Motion is based on rehashed arguments, it is properly denied.

Likewise, CJD's alternate argument that no statute of limitations should apply to alter ego claims because a trustee's ability to recover property of the estate is not subject to any limitation period is merely an attempt to relitigate its motion for derivative standing through arguments it could and should have made at the time the matter was under consideration. In doing so, CJD essentially asks this Court to reconsider its order denying derivative standing under the guise of its request to alter or amend the subsequent November 4 Order denying

-16-

modification of the protective order. The order denying derivative standing was entered September 10, 2025. The only Rule 59(e) motion filed in the case is the present Motion, which was filed November 18, 2025—long after the 14-day deadline for reconsidering the September 10 order had passed. *See* Fed. R. Bankr. P. 9023(b). The Court denied CJD derivative standing, and CJD declined to challenge the ruling when it had an opportunity to do so. It cannot now use its Motion to Alter or Amend the November 4 Order denying modification of the protective order to circumvent procedural rules and undo a separate order on a different motion entered two months earlier. To the extent CJD seeks to advance legal theories or arguments that could and should have been presented earlier or otherwise purports to relitigate matters previously decided, its Motion must be denied.

The last finding that CJD points to as manifest error is the Court's statement that "the request for dissemination to the president of [CJD] is wholly unsupported by any facts about the knowledge or skill of the president or what actual role he might play in the document examination." On this point too CJD does not directly explain the error in the Court's finding, but it does make a general complaint about the protective order impairing its attorneys' ability to represent their client and satisfy their professional obligations to keep their client reasonably informed. The professional obligations owed by attorneys—to their clients and otherwise—are not to be taken lightly. But the impairment of such obligations was never raised before now and CJD's attempt to do so through Rule 59(e) is impermissible.

The protective order at issue was entered June 14, 2024. At the hearing held the day before, Attorney Carter for CJD stated that he was amenable to a protective order limiting dissemination to the Trustee and CJD's attorneys in exchange for CJD's attorneys being able to proceed with broad discovery under Bankruptcy Rule 2004. The protective order entered reflected the restrictions on dissemination discussed at the hearing, and no relief from the order was sought until September 2025 when the underlying motion to modify protective order was filed. The motion to modify protective order itself made no mention of attorney-client issues or the ability of CJD's attorneys to represent their client. Indeed, one basis for denying modification of the protective order was CJD's failure to offer any explanation of need or justification for broadening dissemination of information to CJD's president. The Court's failure to consider matters that CJD itself failed to raise is not manifest error.

On a final note, the Motion to Alter or Amend is peppered with other arguments and assertions that are equally unavailing. CJD renews its belief that the protective order should be lifted because the information is not subject to any claim of privilege and because CJD has no intention of using the information in state court proceedings. Not only are those assertions a further example of CJD's effort to relitigate the motion to modify protective order, but they are also beside the point. The motion to modify protective order was denied for two reasons: the failure of CJD to identify a cause of action it could bring to justify lifting the protective order, and the failure of CJD to adequately identify, justify, and explain which documents it wanted to disseminate for what purpose and

-18-

why it was necessary. CJD's efforts to fill in some but not all of the gaps in its position after the Court has heard and the decided the matters are too little, too late.

### IV. Conclusion

The Motion to Alter or Amend seeks to wind the clock back on matters already litigated and decided. It purports to ask the Court to reconsider its order denying CJD's motion to modify protective order based on manifest error of fact and law committed by the Court, but the relief sought goes beyond the narrow relief available under Federal Rule of Civil Procedure 59(e). None of the findings and conclusions identified by CJD as manifest error were inaccurate based on the facts and law presented to the Court. The reality of the situation is that CJD was granted broad subpoena authority under Bankruptcy Rule 2004 long ago in exchange for a protective order in favor of the subpoenaed parties that limited the use and dissemination of discovered information, but it did nothing with that information—and sought no relief from the related protective order—until the Trustee filed his report of no distribution more than a year later. At that point, CJD hurriedly filed a motion for derivative standing along with a motion to modify protective order, wanting to share information subject to the protective order with a consulting expert and CJD's president and to prosecute certain causes of action on behalf of the estate.

Unfortunately, CJD was either unprepared or unable to establish a basis for the relief it sought under applicable standards, and both motions were

-19-

ultimately denied. The motion for derivative standing was denied first, and the motion to modify protective order was denied two months later after further briefing and hearing. Displeased with the outcome, CJD filed its Motion to Alter or Amend the later order denying modification of the protective order. Although framed as a request to correct manifest error, CJD really wants to give additional context, offer new or modified arguments, or otherwise relitigate matters already decided. It offered no support for its contentions of error that, at their core, relate to the Court's earlier order denying derivative standing which CJD failed to challenge when it had the opportunity.

Whatever the reason for CJD proceeding as it did in its last-ditch efforts to make something of the voluminous discovery obtained under Bankruptcy Rule 2004, the simple fact of the matter is that it failed to establish a basis for relief on the record presented. The Court cannot unwind the events that have transpired to allow CJD a second opportunity to make its case for modifying the protective order or derivative standing. This case has otherwise been uneventful and, based on the Trustee's report of no distribution, is ready to close.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###